We will hear argument next in PureWick against Sage Products, number 221697. Mr. Saunders. May it please the court. So each ground the board relied on should be vacated for multiple reasons, but I'd like to focus on three at the outset. First, on Mann & Smith, the board misinterpreted what it means to be configured and dimensioned for wrapping the and when you take a larger flat pad and put a smaller flat article flat on top of it, that's not wrapping over under the ordinary meaning of that term. Second, on the Desmarais and Kuntz 166 combination, the board failed to construe moisture wicking article despite the dispute there, other than to incorrectly say that you could have a non-wicking material in contact with the body. And then third, the board failed to recognize that the Desmarais overwrap teaching it was relying on when it gave sort of the broader list of materials was referring to materials commonly used in sanitary napkins and diapers, which is an issue on which there was a failure of proof. So starting with wrapping over, this is an implicit claim construction issue here, because on this point, there's not a fight about what the priority is showing, right? We know it's the flat article on the flat pad. And the question is, does that fall within the scope of the claims or not? And under the ordinary meaning of wrapping, these claims don't just say covering, they don't say overlaying. The ordinary meaning of wrapping implies some sort of... Except we're not dealing with the word wrapping by itself, we're dealing with what I guess is in English a rather much less usual usage, namely wrapping over, which sort of points away from the ordinary intuition of surrounding. And then when you say it's wrapping over something that is just openings, not over the three-dimensional object containing the openings, doesn't that leave at least the possibility that it simply means covering the openings? Well, I think just to be clear, we're not arguing that you have to go all the way around to have 100% coverage around that. But the wrapping over, I think over is consistent in reinforcing the argument that flat on flat isn't going to do it. And yes, it is talking about the... In the prior art, the thing that is shown as flat will in fact be bent in use, no? It depends on which pad we're talking about. Pad 12, no. Pad 112 would be bent in use, although in a concave fashion, not in the sort of cylindrical fashion that's shown in the claims. And remember, this is securing by wrapping over and securing. And so when you have it as in the embodiments in the patent, if you have it where it's actually bending over the cylinder, or if you have it where it's gone over an edge and wrapped over, then you're assisting with this flat on flat and all the work is being done by that double-sided tape, then the wrapping isn't contributing to that either. And so under just sort of the ordinary meaning, if you take a piece of paper and lay it on a table and say, have I wrapped this table? No, you haven't. It's smaller. It hasn't gone over the edge. It hasn't wrapped over anything there, whether you look at the articles or the array of openings. And so we think that this is a fight over what the claims mean and should be addressed as a claim construction fight. But even as a matter of substantial evidence, it is just that smaller flat article on top of the larger flat pad would not be wrapped over. It can be directed by the court, but just to make sure we talk about combination, we have our uncovered opening argument on management as well. But just to make sure we talk about those, because that's where we have our other claim construction fight, which is what is the moisture wicking article? And our interpretation, which is the interpretation adopted by the district court, involves the mechanism of action here, which is capillary action, that's what wicking is, from the surface of the article to another. So it has the transport function there. We raise this as a claim construction issue. The board didn't construe the claim. And so under the Homeland Housewares, which is the O2 micro of board decisions, we needed to have a construction on that. Now, the primary response we've gotten is the argument, well, there was an alternative ruling under your own construction. I'll just make two points on that. First, there's no alternative ruling with respect to day marketing, right? The paragraph that's being pointed to wasn't addressing that. It was addressing Kuntz 166. And on Kuntz 166, if you look at what the board's saying at page 56 of the appendix, it's not applying our construction, right? It is looking at the absorbent core within Kuntz and the wicking that occurs within that core, and not what is in contact with the body. And the only way it addresses that is really compounding the error because it's construing the claim to say it doesn't matter that in that case, it's a hydrophobic wrap in Kuntz 166, which is in contact with the body. And that really is defeating the purpose here. The idea is to have the moisture wicking article in contact with the body so that it can be drawing the urine away from the skin and actually assisting in the transportation function. So what we have from the board is a failure to construe the claim that itself should be remanded under the ordinary rules for that to be addressed. And this is a significant failure for the reasons I'm saying that under our construction, under the district court's construction, you have this focus on capillary action. You have a focus on drawing from the surface. And if you have Kuntz 166, where you look at the abstract and it's talking about the hydrophobic outer layer, it's not wicking from the surface, right? The urine on that would be entering from gravity, from the force of it being expelled from the body, but it's not- Kuntz is the one that says preferably? Well, Kuntz, so the abstract of Kuntz says the pad comprises an absorptive core encased within a covering of hydrophobic material such as polyethylene sheet material. Elsewhere in Kuntz, it says preferably. There's no wicking disclosure with respect to the overlap in Kuntz. In other words, when it specifies what that overwrap is, it's consistently talking about its preference for hydrophobic. To the extent it's something else, it doesn't tell us, and it certainly doesn't say, oh, it would be a wicking overwrap that would be drawing into Kuntz. Because that is going contrary to the conventional wisdom at the time, the preference here in the art is for the hydrophobic material. That's how they're trying to get the drier feel. They're not recognizing what this inventor recognized, which is by taking the moisture wicking article and combining that with the wrapping over, I can do something new and innovative here. With respect to that, and then with respect to Kuntz, everything the board is discussing is about the core, except for the one passage in Des Moines, which is the one that talks about permeable material commonly used as an overwrap in sanitary napkins and diapers. Then it gives a broad list. Useful materials can be carded, air laid, all of that. What's missing from the proof here is anything about that common use. The focus was on that abstract set of materials. Can we say that those could encompass something that's wicking? But Des Moines is really saying, I'm not breaking new ground here. This is just what people have been commonly using in the past as this overwrap material. On that, there's no evidence in the record on that point. We don't have anything from Dr. Newman supplying that. I'm sorry, I think I'm remembering this is the piece of Des Moines that talks about non-woven materials. Yes, non-woven. Am I wrong in thinking that there's other aspects of Des Moines and or the expert testimony of Dr. A non-woven and B quite common in this kind of item? Well, I disagree with you on the second. Where they stop is say paper towel is non-woven. It's a bit like saying anything, I have a drinking cup and you can make it of any materials that commonly be used for a cup, metal, plastic, glass. Then someone comes in and says, oh, well, lead is a metal, so that gets covered or some plastic that's too loose and unsuitable for it. It's not a disclosure of every possible material. And you say there's just no evidence. I mean, truly, truly no evidence that paper towel would have been understood as one of the commonly used. Commonly used as an overwrap in sanitary napkins or as a top sheet in disposable diapers. And so what we got was the only evidence that I've seen presented was a representation from their expert that people in sort of casual use, sort of in the absence of a product, using paper towel and underwear. That's not commonly used as an overwrap in sanitary napkins or diapers. What Des Moines really needs is another reference there to show this is commonly used. This is what people are actually out there doing, which isn't presented and they don't have it because that wasn't the practice. The preference here was very much for the hydrophobic. Can you say another reference? Was there any expert testimony on that subject from Dr. Newman or I don't remember? Dr. Newman is stopping. If you look at her analysis, she is stopping her at the point of saying paper towel is one of these materials. And then the only other thing she says is this sort of common casual use. Not what is an overwrap in a commercial product, but just what an individual might be doing in their home. And so you have to be very careful, I think, with these types of disclosures. I mean, just as you might have sort of a broad claim or broad disclosure and still might be able to get a patent more narrowly, it's a tremendous amount of hindsight in the way that Des Moines is being read to say, okay, that list of these materials gets us exactly to your innovation and your wicking item when all Des Moines is saying is just use what people have used before. It really doesn't advance the ball for them there. And everything else that's discussed for Des Moines, the disclosure is about what is in the center. So the passage at appendix 1333 is talking about two sheets of paper towel in the center of Des Moines and the overwrap being folded about that. Everything is what is inside the overwrap, not as what's required here, which is the moisture wicking article in contact with the appropriate region of the body. And so we also, just on the combination, in addition to this sort of fundamental failure of focusing on the core and the one sort of passage in Des Moines that they're relying on, not actually answering the right question, we have the additional problem when we get to claim 17, which is the closed at both ends, that we have expert testimony that's really supplying and missing claim limitations, not found in the references being combined. And it's being presented as, well, this is just a known design solution because if you didn't do it at the end, where else would you do it? Against the backdrop of no one having done that in this context before. And so what I fear is that type of reasoning can really get out of control quickly when it comes to hindsight. I mean, you could say, okay, the car normally has the gas entry, the gas cap on the side. If you didn't put it there, there are only so many sides to a car, so it would just all be a known design choice. It'd be obvious to put it on the roof. I mean, it just doesn't... If you open the door to that type of, well, if it's not there, it would be on some other side design choice, without that being grounded in a reference that is showing you that in this context, then that could go beyond. And then just very briefly before rebuttal, jumping back to Mann and Smith, the issue there is really the inconsistency. It is taking the teaching about Pad 12 and extrapolating that, saying the only thing for array of openings, saying the second embodiment has the same features. And so one of two things is true. Either we can take them at their word and map those openings onto Pad 112, and then we have our answer. It doesn't quite say every feature is the same, right? Doesn't it use some less comprehensive and definitive language? Well, two quick answers. So in the petition, 4026 of the petition on the array of openings in their claim chart, they say, see paragraphs 30 to 31, second embodiment with same features. What Mann and Smith itself says at 1304 is the Pad 112 illustrated in Figures 4 and 5 of the drawing is of construction similar to Pad 12, except for its overall size and the manner of attachment. So Mann and Smith itself isn't saying, I'm different in my openings, I'm different in the array. But the bottom line is, if you can't tell, if the argument is, these aren't precise patent drawings, I can't tell what the openings are, they aren't labeled Mann and Smith, then we run into a failure of proof. Because they're relying on extrapolating one, and so either we get to take them at their word and follow that argument, or there's a failure of proof there. Thank you. Ms. Franzen. May it please the Court. The PTAL properly determined that the 508 patent claims are unpatentable, both as anticipated by Mann and Smith and obvious in view of Kuntz and Desmarais. The record shows that the 508 patent did not claim or describe a complex device with cutting-edge wicking technology. This was just a rudimentary container with holes cut on the top and ordinary household materials such as paper towel, gauze, felt, wrapped over the openings. The claimed invention was well substantial evidence supports the Board's unpatentability finding. The Board relied heavily on Dr. Newman, who was a leading expert in urinary incontinence, repeatedly crediting her conclusions as detailed, credible, well-reasoned, and entitled to significant weight. And in contrast, the Board rejected the conclusions of the appellants expert, Dr. Jezzy, finding that his theories were not credible, entitled to little weight, unreasonable, and contrary to what a POSA would understand, speculative and inconsistent. So the arguments I think that we heard from Mr. Saunders this morning were all about what references say and what the language of the claim here says. None of that depends on crediting or not crediting particular testimony about them. Can you address the particular arguments we heard from Mr. Saunders? Well, yes, certainly. So with regard to the openings issue... The very last one does depend on it. Put that aside. So as to the issue regarding the wrapping issue, so I do think there was a determination on the openings. Let's start with Mann & Smith and wrapping. First of all, we believe this is a substantial evidence issue because at the time below, the argument was that the ordinary meaning applied. They never proposed a claim construction and there was no implicit construction by the Board. They're coming on appeal and trying to create a legal issue where none existed. The Board simply applied the facts of Mann & Smith to the claim language, the undisputed scope of the claim language at the time, ordinary meaning, and made a fact finding. And that fact finding is entitled to substantial deference review, substantial evidence review. What the Board actually said in its decision was that Mann & Smith states that its article is, doesn't just say overlying, replaceably mounted in overlying relationship to the permeable outer layer of the pad. And that the article overlays the outermost face of layer 16. That's where the conclusion and as well as Mann & Smith paragraphs 9 and 21. Moreover, something that was not addressed, the Board recognized the fact that figure one of Mann & Smith shows the article being wrapped over the openings. That's a quote by the Board, which is all the claims require. So those are fact findings, not legal conclusions about what the claims meant. And Mann & Smith repeatedly describes this wrapping over the openings by saying the dry weave is releasably positioned over the outer permeable film layer of the pad. It's replaceably mounted in overlying relationship. It overlays the outermost face. It's not simply just lying a flat sheet on a pad. Let's remember the full claim language isn't just wrap it over the openings. The claim language says the exterior of the container must be configured and dimensioned to enable a moisture wicking article to be secured over the openings by wrapping and securing it. So the point was to get over the Kuntz reference, which in Kuntz the container was simply inserted into the pad. And so during prosecution they said we're overcoming that because we're wrapping it over the openings and securing it. And that's exactly what Mann & Smith discloses as the Board found. And in fact, the Board also specifically found, citing Dr. Newman, that Dr. Newman explained how Mann & Smith described that wrapping concept feature as an improvement to Kuntz. And that's at Appendix 43 in the Board's decision. So the design of Mann & Smith was specifically designed to overcome the deficiencies in Kuntz by wrapping the dry weave over the openings of the pad. But when you're in the process of deciding whether or not a prior art reference teaches a claim limitation, aren't you always making an implicit claim construction? I don't think you're making an implicit claim construction always because a claim construction defines the scope of the claim. And so if you're saying the prior art teaches X, and the claim element requires Y, X teaches, you know, falls within claim Y, you're not describing the scope of what Y is. You're just saying X is under Y. A claim construction describes the something that happened here. And in fact, if we find that every time the Board determines that a reference states X, and thus the claim construction must be X, then every Board decision, nothing's going to ever be a fact-finding, because every Board decision is going to be up for review, and someone's going to argue... But the risk is there, is it not? The risk? The risk. And when you're trying to decide whether or not this particular piece of a prior art reads on, or vice versa, on the claim language. I mean, for example, manusmith here certainly doesn't show for wrapping over the array, wrapping around, right? So when you look at manusmith, you know it's not wrapping around. Well, it's not. So you are of necessity saying the claim doesn't reach wrapping around, which was part of their original argument, as a matter of claim interpretation. That's a fair question. But I think the important part here is that the question was about wrapping around the device. And the claims didn't reference wrapping around the device. The claims claim wrapping over the openings, which has nothing to do with wrapping around the device. So the fact that the Board said, you know, their contention below, which they, by the way, they didn't address as a claim to construction. They didn't say below, you know what, we really think you should construe the claims as wrapping around at least part of the device or three dimensional wrapping over the device. They didn't argue that. They just argued, hey, look, manusmith doesn't disclose wrapping around the device. And the fact that the Board said wrapping around the device is irrelevant. The fact that manusmith doesn't disclose wrapping around the device, that's irrelevant because the claims don't require wrapping around the device. That's not a claim construction about what the meaning of wrapping around. Is it your argument that when the adversary doesn't demand a claim construction, they're in essence sort of waiving the right to argue later that there should have been one? Yes, they're waiving. Is that basically what you're saying? I mean, that's your answer to my conundrum about when it is that the supposed fact finding is actually demonstrating an implicit claim construction? Yes, I do think that they've, they did waive it. But I also further think in this. We don't have a case that says that, right? That. I don't think we have a case that says when in a setting like this one, especially at the PTO and you know, each side says, well, you've just ordinary meaning, then any scope type of problem reduces itself to a fact question of whether or not the prior art reads, the claim reads on the prior art. Well, I do believe we have a case. Apple v. Unilock was a case where someone was arguing that the court implicitly construed the claims by applying the facts, by applying the claims to the prior art. That was the Apple v. Unilock at 843 F Appendix at 286. And the court here said. That's not binding, right? Pardon me? That's, if it app acts, it's not binding. Yes, sir. Yes, your honor. But it is the case where the court rejected Apple's attempt to quote. That would be a pretty broad statement, wouldn't it? It would show up in the box. If we were to hold that a party who doesn't ask for a claim construction is a stop from trying to argue the argument that Mr. Saunders is making here today. Well, I think if you want to raise a claim construction before the PTAB, you should raise the claim construction issue. If you're just asserting that it's ordinary. What happens if it is an ordinary term and you both think you understand the ordinary term and the board in its application applies it in a way that is so out of the realm of what the and it's just wrong as a matter of looking at the claim. That there's no way if the board had construed this in an ordinary meaning way that they would have come up with this. Are you saying we still can't get at that and say the board has implicitly made an incorrect claim construction? No. I mean, I'm sure your position here is that that's not what's happened. But clearly, if the board has applied the language of the claim to the facts of the case in a way which makes it impossible to conclude anything, but the board has just completely misconstrued the claim, we can certainly review that, can't we? Even if neither party had asked for a claim construction. Yes, you certainly can. So actually, that was the Apple versus MPH case. And in that scenario, the board did go... Is that one published? It is, according to my site, 2022 West Law 410-3286. That doesn't tell me whether it's presidential or not. It is a recent case, and that's the site that we have. But in that case, this was another implicit claim construction case. The court in that case held that the board did go beyond what was argued and actually came up with the construction of the claim. And it came up during oral arguments in that case. So in that scenario where the board's going beyond what the parties thought and beyond what's required and actually coming up with a definition that's the scope of the case or the claim, then yeah, I think that is an implicit construction that can be addressed. That's not the case here. We think we're more like the Apple v. Unilock case. And we also did cite... So isn't your position really that, of course, there's an underlying implicit construction, but it's not incorrect? I think we're not... I think the board applies the ordinary meaning properly, if that's to answer the question. I mean, the board has to know what the definition of the term is to determine whether or not it fits it or not. Yes. And if the board applies the ordinary meaning, it requires a redefinition of the term. But I think what happened here in this case is there was no dispute that the ordinary meaning applied. They did not propose a claim construction that they easily could have proposed. That was that it's this three-dimensional all-around-the-device type of analysis that they're offering here. And when the board simply said, as a matter of fact, you know what? It's irrelevant that the dry weave in Mann & Smith doesn't go around the device because that's not the claim language. That's not opining on the scope of... It doesn't tell us what wrapped over means. Did the board say anything about whether the Mann & Smith 112 pad would bend? Not would bend, but would bend in use? Because I think there's a sort of a softer form of the argument that I think Mr. Saunders is making that it doesn't have to go all the way around, but it has to turn a corner or go around an arc or something, but it just can't be, you know, flat on flat. Yeah. So that issue was not addressed below because that issue was never raised below. And so no one opined on whether there was bending of the Mann & Smith pad because this is a completely new argument on appeal. The claim construction issue just was not addressed. Their argument below was simply that it didn't wrap around the device. And that was their argument. And it was incorrect. And the board was right in saying it was incorrect, as a matter of fact. And that's just not encompassed by the claim. If the claim says, you know, I have a widget that's red, and someone comes back and says, well, the prior doesn't disclose a square widget, that's irrelevant to what the meaning of a red widget is. And I think that's what happened below, even though the appellant is trying to convert into a claim construction dispute. Do you have anything to say very quickly about the non-Mann & Smith arguments that we heard this morning? I'm sorry, can you- Non-Mann & Smith. Oh, yes. So let's turn to Koontz and Desmarais. The substantial evidence supports the board's finding that both Koontz and Desmarais disclosed moisture wicking articles, each separately, which would be enough. And it does not raise a claim construction issue. So there's no claim construction dispute that was triggered by the moisture wicking article claim language. The reason why, just for some context, and we put this in our brief, the reason why moisture wicking article was construed by appellant below was because, for a different reference, there was a dispute over whether it was a moisture wicking article. For Koontz and Desmarais, the record below, there was no dispute. Let's turn to- with regard to the meaning of the term. So let's turn to Desmarais first, because I The appellants argued about whether paper towel was disclosed in the overwrap in Desmarais, and that's, you know, Dr. Newman testified that it was at Appendix 1104. But regardless, they ignore the statement. There's some discussion here about the commonly used reference. Let me get the exact language. Whether it could be commonly- this pad overwrap can be any fluid permeable material commonly used as an overwrap. That was the first sentence in Desmarais, and that is the only sentence that they address. So let's address that first sentence. The question came up of whether there was anything in the record about whether paper towel was commonly used. And the answer is there was evidence in the record. At Appendix 1540, Dr. Newman specifically talked about how paper towel and toilet tissue paper were one of the most common articles used by such individuals in self-care as the patient facing layer. I think Mr. Saunders would say, well, yes, but that's not as an overwrap. That- by saying it's the patient facing layer, that is the top over layer. Moreover, on Appendix 1025, Dr. Newman all further said that paper towel was often used in urine collection devices and gave numerous advantages and discussed how it was used throughout the structure. So that was at Appendix 1025, and it actually goes on to 1026. That's her background of the art. So that certainly was there. That addresses the commonly used sentence and the evidence there, but there's a completely different sentence, and the different sentence does not say commonly used. That sentence that the board relied on said that the board- and this is the board found that relied on this sentence. It separately said, without using the word commonly used, useful materials for the fun-bonded melt-blown web, air-laid webs, and other non-woven webs of natural or synthetic fibers. It didn't say anything about commonly used, but it described air-laid webs in particular and other non-woven webs of natural or synthetic fibers. And Dr. Newman explained at Appendix page 1109, for example, this is her quote, an air-laid web, which is a non-woven fabric made of fluffed fibers, is a moisture-wicking article. And this is something the board relied on. And the 508 patent itself, Dr. Newman states that the non-woven web of fibers, namely felt, are moisture-wicking articles. Felt specifically is named on the list of moisture-wicking articles in the 508 patent. And that is why the board concluded that Desmarais, in that sentence about what's in the overwrap, discloses materials in the 508 patent that are disclosed as moisture-wicking articles. Moreover, and just for reference, that's at Appendix 71, column 4, lines 10 through 14. Moreover, the board noted... Yeah, I think you should be wrapping up. Oh, okay. Pardon me. That's all right. Let me just move on to Kuntz just very quickly. The Kuntz reference, the argument that hydrophobic, that Kuntz has a preference for i-hydrophobic, I will say that that was not brought up until the STIR reply. The original argument was different, so we believe it was forfeited. Nonetheless, the board found that nothing in the plaintiff's claim construction, I mean, in the appellant's claim construction, required that the entirety of the moisture-wicking article consist of moisture-wicking materials, and that was supported by the specification. And that was explicitly discussed in the board's decision. Thank you. Thank you, Your Honors. Just quickly, on wrapping over, at Appendix 4338, you'll see the way it was argued within that section. It's not in the claim construction section, but it talks about, in conclusory fashion, the petition equates overlaying and overlying with wrapping. That's the Padnona response. Yes, Padnona response. Petitioner provides no explanation of how laying or placing a flat sheet on a flat pad meets the ordinary meaning of wrapping consistent with the specification. Indeed, Pad 112 is configured intervention to be larger than Porter Sheet 136, thereby preventing it from wrapping over the array of openings. We're clearly conveying our understanding of plain and ordinary meaning of the claims. As Judge Hughes pointed out, sometimes both parties think they have the ordinary meaning. You get to the board's decision, and it ends up using this definitional language, saying replaceably mounted, overlaying, quote, that is exactly what wrapping over openings is. We disagree as a matter of claim construction, and we just want to get back to that proper ordinary meaning of wrapping over. Judge Clevenger, on your question about forfeiture in the Apple v. MPH case, it cites the HTC decision from this court, which is precedential, and recognized that the parties hadn't argued it as claim construction below, but you could have an implicit claim construction that then gets reviewed as a claim construction on appeal. Thank you. It did seem a little extreme that we would... Right, and there are many cases... Make our cases a lot easier. On the Moisture Wicking article, there very much was a dispute by it, and I think that if you look at first on the Dame Array point we were talking about, the passage in Appendix 1540 was not showing common use as the overwrap in a sanitary napkin and diaper. That was the passage that was about patient self-care. What you were pointing to at Appendix 1025, that was just a general statement that it's common to use paper toweling in these products. It's not going to the fundamental issue here, which is the overwrap. And the last point about Koontz that was made, this goes to the nub of the claim construction dispute. Our claim construction of Moisture Wicking article that was adopted by the district court was about wicking from the surface, that transportation all the way from the surface, and so to say it doesn't matter, you can have a non-wicking article at the surface, is defeating the point. You don't have that wicking material right against the skin, talking as the specification does, about drawing into the Moisture Wicking article. And I see my time is up. Thank you. Thank you. Thanks to both counsel. The case is submitted, and that completes our case look for the day.